Benjamin Gassman, J.
The defendants were convicted of violating subdivision 11 of section 722 of the Penal Law. It was charged that on January 30, 1960, at about 6:00 p.m. they were found standing on the second-floor landing of premises 2817 Zulette Avenue, Bronx, a two-family building. The police officers were conducting an investigation in that building, which resulted in the arrest of four persons (not the defendants) for violation of section 1372 of the Penal Law — contriving a lottery. The detectives entered the said building at 4:30 p.m. and, at 6:00 p.m. found the defendants outside the apartment which was the subject of the investigation. The police inspector turned the defendants over to a detective for questioning. In the course of the interrogation, Loproto stated that he was in the building visiting his aunt, Marie C'ordovano, who lived in the apartment below the one raided by the police. According to the detective’s testimony, Marie Cordovano did actually live in that building. Martino algo stated that he was there to visit the Oordovanos, *404 In answer to the detective’s question as to how much money-each defendant had, Loproto pulled out $213 from his pocket and Martino had $397. Each defendant stated that he participated in a crap game on the street and won that money. Loproto denied any prior convictions. Detective Capparell, however, testified that he was present in the Court of General Sessions on May 12, 1955, when Loproto pleaded guilty to violating section 1897 of the Penal Law. Detective Whitney testified that he was present in the Court of Special Sessions on November 30, 1951, when Loproto pleaded guilty to violating section 974 of the Penal Law and was sentenced to pay a fine of $200 or, in the alternative, to serve 20 days in the Workhouse. The police officers also testified that they found in the raided apartment two tables, an adding machine, four comptometers, policy writing, pencils, envelopes and pads, also 860 envelopes containing about 5,000 slips, almost 8,000 numbers. It was then that they arrested the four occupants of that apartment. However, the case against those four persons was still pending undisposed of at the time of the defendants’ trial. The defendants, however, were not in that apartment. They were brought into it by the detectives after being questioned. None of the officers saw the defendants do anything or talk to anyone, not even to each other.
Over defendants’ objections, Detective Capparel testified that he knew people who knew Loproto; that he discussed the latter’s reputation with them, and that his reputation was bad. On cross-examination, he testified:
“ Q. Did you discuss whether he had a bad reputation? A. No, we discussed the matter in which we were working, investigating.
“ Q. Did you ever discuss with anybody any part of his character or personality? A. No, sir.”
Detective Gannon testified that he knew Martino and discussed his reputation with people in the community, stating: “ It’s bad — evil.” He also stated that on September 25, 1958, he observed Martino in the company of nine other men and stated: “ Those individuals are convicted narcotics peddlers and gamblers.” On cross-examination, he stated that he discussed with fellow officers and narcotics Federal agents Martino ’s ‘1 narcotics reputation ’ ’ and that one officer to whom he spoke told him that Martino was ‘ ‘ a knock-around guy ’ ’.
The above substantially constitutes the proof against the defendants, on which this conviction is based.
In order to justify a conviction, the People must prove: (1) that a defendant is engaged in some illegal occupation; or (2) who bears an evil reputation and with an unlawful purpose *405 consorts with thieves or criminals or frequents unlawful resorts. That the defendants were persons of evil reputation and had met and consorted together, is insufficient to convict them under subdivision 11 of section 722. That subdivision requires that the consorting must be for the purpose of doing something unlawful. (People v. Pieri, 269 N. Y. 315.) In addition, the acts of the defendants must be such as “to provoke a breach of the peace, or whereby a breach of the peace may be occasioned ”. The evidence in the record falls short of the proof required.
In People v. Bailey (152 Misc. 848, 849) the court said: “ The People have failed to prove the defendant was engaged in an illegal occupation; or that he frequented an unlawful resort. There is some evidence that he bore an evil reputation; but in order to convict him of this, and in accordance with statute, the People must go further and prove in addition to evil reputation, that he consorted with thieves and criminals or frequented an unlawful resort.”
In People v. Greenberg (142 Misc. 680, 681) this court reversed a conviction under subdivision 11 of section 722, saying:
“ The appellants were charged with and convicted of a violation of subdivision 11 of section 722 of the Penal Law & * #
‘ ‘ It appears from the record that the appellants and one Goldman were seen talking together at the corner of Cannon and Stanton Streets in the Borough of Manhattan, city of New York. It further appears that the appellants had been convicted of crimes on several previous occasions and that when arrested by the officer they had been consorting together insomuch as two of the said defendants were found seated in an automobile and the third, one Goldman, was on the street talking to them. It nowhere appears in the record that the said defendants were so consorting for an unlawful purpose and the circumstances under which they were found does not permit this court to infer that said defendants were so consorting for such unlawful purpose.”
In the case at bar, there is no evidence in the record as to the purpose for which the defendants were present in the building in question. They told the police detective who questioned them that they were there to visit Marie Cordovano, who actually lived in that building. While four persons were arrested in the raided apartment, the defendants were not inside that apartment at the time.
A defendant is presumed to be innocent until found guilty beyond a reasonable doubt. In our opinion, the People have not adduced sufficient evidence to overcome the presumption of *406 innocence. The circumstances under which the defendants were found in the premises may be suspicious, but suspicion cannot take the place of legal proof.
The judgment should be reversed, the complaint dismissed, and the defendants discharged.
Murtagh, P. J. and Ringel, J., concur.
Judgment reversed, etc.